FILED

2022 Apr-25  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JANET DAVIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action Number |
| **v.** ) | **4:21-CV-00197-AKK** |
| ) | |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### <u>MEMORANDUM OPINION</u>

Janet Davis seeks review of the decision of the Acting Commissioner of the Social Security Administration denying benefits.  Doc. 1.  Davis contends that the Administrative Law Judge improperly discounted her pain-related testimony and failed to consider her need for knee surgery, leading the ALJ to evaluate Davis's capacity for work without an accurate summary of her limitations.  *See* doc. 14.  As explained below, however, the ALJ's decision is due to be affirmed.

### I.

Davis applied for disability and disability insurance benefits and supplemental security income in August 2019 after working in assembly-line production roles and experiencing increasing leg and knee pain.  *See* docs. 14 at 1–2; 15 at 2; R. 17; R. 235.  After the SSA denied her applications, an ALJ held a hearing with Davis, her attorney, and a vocational expert and concluded that Davis was not disabled.  R. 15;

R. 17.  The Appeals Council denied review, R. 1, and the ALJ's decision thus became the decision of the Acting Commissioner.  Davis then filed this petition for review.  Doc. 1.

## II.

On review, the court may decide only whether the record contains substantial evidence to support the ALJ's decision and whether the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).  Courts review de novo the legal conclusions upon which the Commissioner's decision is based, while the Commissioner's factual findings are conclusive if supported by "substantial evidence."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  This threshold "is not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and requires "less than a preponderance," *Moore*, 405 F.3d at 1211.  Thus, if substantial evidence supports these findings, the court must affirm, even if the evidence preponderates against them.  *Noble*, 963 F.3d at 1323.

When determining whether substantial evidence exists, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court also cannot automatically affirm the decision.  *Lamb v. Bowen*, 847 F.2d

698, 701 (11th Cir. 1988).   Rather, the court "retain[s] an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable."  *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

## III.

The Social Security Act "places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work." *Bloodsworth*, 703 F.2d at 1240.  Indeed, "[t]his stringent burden has been characterized as bordering on the unrealistic."  *Id.* (collecting cases).  A claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 416(i)(1).  The ALJ must determine, in sequential order:

    (1) whether the claimant is currently unemployed;
    (2) whether the claimant has a severe impairment;
    (3) whether the impairment meets or equals one listed by the Commissioner;
    (4) whether the claimant is unable to perform his or her past work; and
    (5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"An affirmative answer to any of the above questions leads either to the next

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).

If the claimant cannot perform his or her past work, the ALJ must prove that the claimant can perform other work at Step Five. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). *See also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). To this end, the ALJ can use a vocational expert's testimony as "substantial evidence" of other jobs the claimant can perform if the ALJ "pose[s] a hypothetical question [to the vocational expert] which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). Otherwise, the vocational expert's testimony cannot support a conclusion that the claimant can perform "significant numbers of jobs in the national economy." *Id.* at 1181.

In the course of determining the claimant's limitations, when evaluating the claimant's testimony about "pain or other subjective symptoms," the ALJ must determine whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the record shows the claimant has a

"medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider "all of the record," including objective medical evidence, the claimant's history, and statements by the claimant and the claimant's doctors, and the ALJ may consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or symptoms; the type, dosage, effectiveness, and side effects of the claimant's medication; and treatments other than medication, for example. *Id.*

The ALJ must also examine the symptom-related testimony in relation to the other evidence, considering whether there are "inconsistencies or conflicts between those statements and the record." *Id.* If the ALJ subsequently discredits the claimant's testimony, the ALJ must "articulate explicit and adequate reasons for doing so," and the failure to articulate the reasons for discrediting this testimony "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). In sum, the court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell*, 771 F.3d at 782 (internal citations omitted).

Finally, when evaluating mental limitations, the ALJ considers four categories of abilities to "evaluate how [the claimant's] mental disorder limits [her or his] functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00A(2)(b). These categories consist of how a claimant (1) "[u]nderstand[s], remember[s], or appl[ies] information"; (2) "interact[s] with others"; (3) "concentrate[s], persist[s], or maintain[s] pace"; and (4) "adapt[s] or manage[s] [himself or herself]." *Id.* To meet or medically equal a listed impairment, the claimant must establish an "extreme" limitation of one or "marked" limitation of two areas. *See id.*

## IV.

In this case, the ALJ determined at Step One that Davis had not engaged in substantial gainful activity since her alleged onset date in September 2018. R. 19. At Step Two, the ALJ found that Davis had the following severe impairments: "obesity, degenerative joint disease of the right knee, and degenerative disc disease in combination [with] degenerative joint disease of the left hip." *Id.* The ALJ also found that Davis experienced non-severe physical impairments that included "mild degenerative changes in her left knee" and "mild osteoarthritic changes in the acromioclavicular joint" of her left shoulder. R. 20.

As to Davis's mental health, the ALJ first noted that "[a]lthough [Davis] alleged significant mental limitations, [she] did not seek mental health treatment until about a month after her disability applications were denied at the initial level

of review." *Id.*  According to those treatment records, in December 2019, Davis visited Cherokee Etowah Dekalb Mental Health Center for depression, stress, and anxiety and indicated suicidal ideation and paranoia.  R. 20–21; *see* R. 392–98.  The Center diagnosed her with major depressive disorder with psychotic features, and she returned for therapy several months later.  R. 21; *see* R. 388–92.  Her responses to the therapist indicated "daily depression, agitation, and withdrawn behaviors," R. 389, and though Davis "was scheduled to return for individual therapy and medication management" in May 2020, "[t]here [were] no further treatment records in evidence."  R. 21.  Davis testified that she took Zoloft.  *Id.*; R. 41.

Reviewing this evidence, the ALJ determined that Davis did not have "a psychiatric impairment that cause[d] more than minimal limitation[s] in her ability to perform basic mental work activities."  R. 21.  Looking at the "four broad functional areas" of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, the ALJ found that Davis "ha[d] no more than mild limitations in the first three functional areas and no limitation in the fourth area."  *Id.*  Thus, the ALJ concluded that Davis's mental impairments were non-severe.  *Id.*

The ALJ then turned to the other evidence in Davis's medical record to determine her residual functional capacity.  *See* R. 22.  The ALJ first observed that Davis "ha[d] a history of left hip degenerative joint disease and morbid obesity,"

evidenced in part by August 2017 X-rays and exam findings at Riverview Regional Medical Center.[1]  *Id.*; *see* R. 313–15.  When Davis applied for benefits in August 2019, she indicated attending Etowah Free Community Clinic, R. 236, where she reported knee and hip pain that radiated down her legs.  R. 22; R. 335–37.  She received pain medication, including Naproxen.  R. 22–23; R. 335.  Around this time, she visited Advanced Imaging for knee pain, and Dr. Kennon Hager reported "[m]inor medial tibial plateau sclerosis and marginal patellar osteophytic spurring" without "additional focal or acute pathology."  R. 367.

Following up at the Community Clinic, Davis reported that "pain in [her] right knee and left hip was a 10 on 1-10 scale [and] not being helped with medication." R. 23; R. 343.  She received additional medications, including steroids.  *See id.* Davis returned to the Community Clinic in September and October 2019 for medication refills, and on October 31, she reported "stabbing back pain" and "10/10" knee pain.  R. 23; R. 380.

In November 2019, Davis went to Dr. Jimmy Oguntuyo for a consultative examination and reported that "sharp" back and knee pain, which had led to swelling, made walking difficult.  R. 23; *see* R. 348.  Dr. Oguntuyo noted that Davis used a non-prescription rolling walker for support, stability, and mobility and indicated that

---

[1] Davis also visited Riverview in November 2017 and July 2018, although the ALJ did not specifically summarize these exams.  In particular, Davis visited Riverview in November 2017 with "the complaint of rash," R. 316, and with "left side chest pain," R. 318, and then returned in July 2018 with chest and hip pain, R. 322–23.

she had "[u]nilateral primary osteoarthritis" in her right knee, "[l]umbago with sciatica" on her left side, "chronic pain," "abnormalities of gait and mobility," morbid obesity, anxiety disorders, and difficulty walking. R. 348–50. Dr. Oguntuyo concluded that Davis potentially could not perform work involving "prolonged sitting, walking, lifting, carrying, [or] handling objects" because of "worsening osteoarthritis of the right knee [and] chronic low back pain with []radiculopathy." R. 350.

In late 2019, Davis went to the emergency department at Riverview after falling, and she complained of pain in her right knee, left femur, and left shoulder. R. 23; R. 354. Her shoulder X-rays returned without "acute osseous or soft tissue abnormality" but with "[m]ild osteoarthritic changes . . . at the acromioclavicular joint." R. 354. Her femur and knee X-rays revealed no "acute osseous or soft tissue abnormality," though her right knee showed "[m]ild medial compartment joint space narrowing and mild retropatellar spurring." *Id.*

In early 2020, Davis's spine X-rays indicated mild scoliosis and mild to moderate degenerative changes, and a radiologist noted minor joint sclerosis. R. 23; R. 370. A right knee MRI showed marginal spurring and "maceration or possibly [a] very limited tear." R. 372. Davis followed up at the Community Center, where she reported that "[s]hots and cream ha[d] not brought any relief" and that her right knee pain "[was] a 9 on the pain scale." R. 375. Davis also stated that she had not

slept in three days because of the pain and that her left leg had begun to hurt.  *Id.*
The doctor advised Davis "to apply for Medicaid to have knee surgery for meniscal
repair [and] do[] knee exercises and continue diet."  *Id.*

> After summarizing these medical records, the ALJ wrote:
>
> I have afforded [Davis] every benefit of the doubt in my interpretation
> of the above medical evidence. The diagnostic imaging of her right
> knee does not document any dramatic abnormalities, but in light of her
> obesity and the recent recommendation for surgical treatment, I find
> that a restriction to sedentary work is reasonable. . . .  While the
> evidence does show that [Davis's] impairments limit her capacity for
> standing and walking, there is no support for the statement in her
> function report that she could only walk two steps before needing to
> stop and rest for 30 minutes.

R. 24.  The ALJ then turned to prior medical opinions and findings, beginning with
Dr. Robert Estock, Dr. Kristen Berthiaune, and Dr. Jack Bentley, who all opined as
to aspects of Davis's mental health.  *See* R. 24.  The ALJ essentially reaffirmed that
their opinions supported the finding that Davis's mental limitations, including her
depressive disorder, were non-severe.  *See id.*  The ALJ also considered the opinions
of Dr. Robert Heilpern and Dr. Krishna Reddy, who discussed Davis's physical
abilities, including standing, walking, pushing, and pulling.  *See* R. 25.  On this front,
the ALJ concluded:

> Although [Davis] would likely be able to lift and carry at the light
> exertional level, . . . she would not be able to perform the standing and
> walking required of light-level work. Although Dr. Reddy indicated
> that [she] could stand and walk for four hours out of an eight-hour
> workday, that level of standing and walking necessarily falls within the
> sedentary exertional level . . . [and] in order to provide [Davis] with

every benefit of the doubt, I have determined that [she] can perform work at the sedentary exertional level.

*Id.* The ALJ discounted Dr. Oguntuyo's opinion to the extent that it cast doubt on Davis's ability to perform sedentary work because of discrepancies in his conclusions and findings about her back pain and her ability to grip and handle. *Id.*

Relevant to Davis's appeal, the ALJ posed the following hypothetical to the vocational expert:

> . . . [A]ssume a hypothetical individual of [Davis's] age, education, and the past work that you've just described for us. This individual could perform work at the sedentary exertional level with the following additional limitations. She could occasionally push and pull with the bilateral lower extremities, or I guess operate foot controls. She could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She could frequently balance. She should never climb ladders, ropes, or scaffolds. She should have no exposure to hazards, such as unprotected heights and dangerous machinery.

R. 68–69. The ALJ asked if this person could perform Davis's past work, to which the vocational expert replied in the negative. R. 69. The vocational expert testified that this individual could instead work as a "dowel inspector," "spotter," or "lens inserter." *Id.* The ALJ then added mental limitations—that the person could understand, remember, and execute "simple instructions and tasks"; tolerate "infrequent and gradually introduced" workplace changes; and have "occasional work-related interaction" with others—and asked if those jobs would remain. R. 69–70. The vocational expert answered in the affirmative. R. 70. Last, the ALJ asked how many jobs would remain if the individual "miss[ed] more than two days per

11

month on a regular basis," to which the vocational expert answered that no jobs would permit that level of absences.  *Id.*

After determining that Davis had the residual functional capacity to perform sedentary work with certain limitations,[2] the ALJ used the vocational expert's testimony to conclude at Step Five that Davis could perform other work in the economy.  *See* R. 27.  Thus, the ALJ found that Davis was not disabled.  *Id.*

## V.

Davis argues that the ALJ's decision is not supported by substantial evidence because the ALJ's hypothetical questions incorrectly described Davis's restrictions, especially with respect to Davis's right-knee meniscal tear.   Doc. 14 at 10.  Relatedly, Davis contends that "[i]f [her] pain is so severe that she needs knee surgery to relieve it, the ALJ's reasons for not fully crediting her subjective pain testimony are not supported by substantial evidence."  *Id.* at 12.

To properly rely on a vocational expert's testimony, the ALJ must pose hypothetical questions that accurately characterize all of the claimant's limitations.  *Winschel*, 631 F.3d at 1181.  And to determine the claimant's limitations, when considering the claimant's testimony about his or her symptoms, the ALJ must

---

[2] Specifically, the ALJ found that Davis could "perform sedentary work . . . except she [could] occasionally push and pull with her bilateral lower extremities. She [could] occasionally climb ramps and stairs but should never climb ladders, ropes or scaffolds. She [could] frequently balance and occasionally stoop, kneel, crouch and crawl. She should have no exposure to hazards such as unprotected heights and dangerous machinery."  R. 22.

ascertain the "intensity and persistence" of the symptoms to evaluate how they limit the claimant's capacity for work. *Costigan*, 603 F. App'x at 786; 20 C.F.R. § 404.1529(c)(1). To make this finding, the ALJ must consider all of the record, including the objective medical evidence, the claimant's medical history, and statements by the claimant and his or her doctors, to determine how the testimony accords with the other evidence. *See id.* The ALJ may subsequently discount the testimony if the ALJ "articulate[s] explicit and adequate reasons for doing so," such as by citing contrary evidence. *Wilson*, 284 F.3d at 1225–26.

In this case, Davis takes issue with the ALJ's conclusion that Davis could "frequently balance and occasionally stoop, kneel, crouch and crawl" despite her need for knee surgery and argues that the ALJ should have posed a more limited hypothetical question to the vocational expert. *See* doc. 14 at 10. It is true that the ALJ determined that Davis could perform sedentary work with the limits that Davis describes, and the ALJ used this capacity to question the vocational expert. *See* R. 22; R. 68–69. But as both Davis and the SSA observe, *see* docs. 14 at 9–10; 15 at 7–8, the ALJ explicitly mentioned Davis's condition, including her right knee, when the ALJ rendered the relevant residual functional capacity finding that formed the basis of the hypothetical question. *See* R. 24 ("The diagnostic imaging of [Davis's] right knee does not document any dramatic abnormalities, but in light of her obesity and *the recent recommendation for surgical treatment*, I find that a restriction to

13

sedentary work is reasonable.") (emphasis added).  Therefore, the ALJ's decision undermines Davis's claim about failing to account for her potential knee surgery.

Further, Davis does not address other limitations she believes the ALJ should have included.  Instead, she argues only that her need for surgery demonstrates that her pain must be "so severe" that substantial evidence cannot support the ALJ's "reasons for not fully crediting her subjective pain testimony."  Doc. 14 at 12.  However, the ALJ explained why she limited Davis to sedentary work, noting that certainly "[Davis's] impairments limit[ed] her capacity for standing and walking" but that "there [was] no support for the statement in her function report that she could only walk two steps before needing to stop and rest for 30 minutes" or that she regularly used or required a walker.  R. 24.  In other words, to account for Davis's symptoms, including those related to her knee, the ALJ restricted Davis to work she could perform primarily while seated.  *See id.*

Considering this evidence, the ALJ could properly decide to credit some of Davis's testimony about her knee pain while determining that it was not so severe as to necessitate further limitations.  And the court may not reweigh the facts or evidence on this point.  *Noble*, 963 F.3d at 1323.  Given that the ALJ's "clearly articulated credibility finding [is] supported by substantial evidence" in Davis's record, *see Mitchell*, 771 F.3d at 782, and Davis raises only these contentions of error, the court will affirm the ALJ's decision.

14

## VI.

To close, Davis's claim that the ALJ should have included more limitations in her residual functional capacity and in the hypothetical questions to the vocational expert is unfortunately contradicted by the record or otherwise unsubstantiated. Because substantial evidence supports the ALJ's determinations, the court will affirm the decision by separate order.

**DONE** the 25th day of April, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE